United States District Court
Southern District of Texas
**ENTERED**
November 28, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| ERIC GRAHAM LANGSTON, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:22-cv-00126 |
| | § | |
| AMERICAN NATIONAL PROPERTY AND CASUALTY CO., | § § | |
| | § | |
| Defendant. | § § | |

## OPINION AND ORDER

Pending before me is a Motion for Summary Judgment filed by Defendant American National Property and Casualty Company ("ANPAC"). *See* Dkt. 15. Having considered the summary judgment briefing, the record, and the applicable law, I **GRANT** the motion. My reasoning is set forth below.

## BACKGROUND

Plaintiff Eric Graham Langston ("Langston") owns a home at 6 Whittier Drive, Friendswood, Texas 77546-4021 ("6 Whittier Drive" or the "Property"). He purchased the Property on December 15, 2020. At the time of the purchase, ANPAC, as a provider of federally-funded flood insurance, insured the Property through Standard Flood Insurance Policy number 87062651952020 (the "Policy"), effective from June 12, 2020 to June 12, 2021. The Policy transferred from the previous owners of 6 Whittier Drive to Langston upon the sale of the Property.

A Flood Policy Declarations sheet, issued by ANPAC on December 2, 2020 and sent to Langston at 6 Whittier Drive, clearly states that the Policy Period ran from June 12, 2020 to June 12, 2021.

On April 14, 2021, ANPAC mailed a Renewal Notice dated April 13, 2021 to Langston at 6 Whittier Drive, notifying him that the Policy was set to expire on

June 12, 2021.[1] The Renewal Notice explained to Langston that his $597 premium payment to renew the Policy was due on June 12, 2021. Any payment made "within 30 days of the expiration date," the Renewal Notice provided, would result in the Policy being "renewed without any lapse in coverage." Dkt. 15-9 at 4. The Renewal Notice further provided that:

> Any payment received after the 30-day grace period and prior to 90 days after the policy expired will renew this policy, however, there will be a 30-day waiting period, **commencing from the date premium is received,** for coverage to be effective.

*Id.*

Langston failed to make a renewal payment by June 12, 2021. On June 13, 2021, ANPAC mailed a Flood Insurance Expiration Notice to Langston at 6 Whittier Drive. The Flood Insurance Expiration Notice informed Langston that his Policy expired on June 12, 2021 and that he could ensure the Policy remained in effect without any lapse in coverage by making the $597 renewal payment by July 11, 2021.

Langston did not submit a renewal payment by July 11, 2021. As a result, the Policy expired due to non-payment of the premium.

On February 7, 2022, almost eight months after the Policy expired, Langston's insurance agent emailed ANPAC, requesting that the Policy be renewed. According to the insurance agent, Langston "claim[ed] that he did not receive the flood insurance renewals last year and this is why he did not pay for the policy renewal." Dkt. 15-12 at 1.

When ANPAC refused to reinstate the Policy, Langston filed the instant lawsuit. He claims that because ANPAC did not renew his flood insurance, he had to obtain a new flood insurance policy at a significantly higher cost—$1,302 for a 12-month period. Langston brings causes of action against ANPAC for breach of

---

[1] A copy of the Renewal Notice was also mailed to Langston's mortgage company, Hometrust Mortgage Company ISAOA.

contract, declaratory judgment, and violations of the Texas Deceptive Trade Practices Act ("DTPA").

ANPAC has moved for summary judgment on each cause of action.

## SUMMARY JUDGMENT STANDARD

"Summary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019); *see also* FED. R. CIV. P. 56(a). "The summary judgment movant bears the burden of proving that no genuine issue of material fact exists." *Certain Underwriters at Lloyds, London v. Cox Operating*, 83 F.4th 998, 1002 (5th Cir. 2023). A fact issue "is material only if its resolution could affect the outcome of the action." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 877 (5th Cir. 2003) (quotation omitted). When deciding whether a fact issue exists, I must review the evidence and draw all inferences in the light most favorable to the nonmoving party. *See Bourne v. Gunnels*, 921 F.3d 484, 492 (5th Cir. 2019).

## STATUTORY AND REGULATORY FRAMEWORK

The National Flood Insurance Program ("NFIP") allows private insurers, like ANPAC, to issue and administer federally-funded flood insurance policies in their own names. The Fifth Circuit has summarized how the NFIP functions:

> The National Flood Insurance Program (the "NFIP") was established by the National Flood Insurance Act of 1968 (the "Act"), 42 U.S.C. § 4001, et seq. The Federal Emergency Management Agency ("FEMA"), an agency of the Department of Homeland Security, administers the NFIP. The NFIP has two components: (1) a flood insurance program, and (2) a unified national plan for flood management. 42 U.S.C. §§ 4001(b) and (c). Initially, the program operated primarily through a pool of private insurers under the supervision and with the financial support of the Department of Housing and Urban Development. In 1977, the Secretary of HUD made FEMA primarily responsible for its operation. 42 U.S.C. § 4071. FEMA by regulation promulgated the Standard Flood Insurance Policy ("SFIP") and provided for marketing and claims adjustment by private insurers operating as "Write Your Own" ("WYO") companies. These companies issue SFIPs in their own names, and arrange for the

adjustment, settlement, payment and defense of all claims arising from the policies. FEMA regulations establish the terms of the SFIP, rate structures and premium costs. Claims are ultimately paid out of the U.S. Treasury.

*Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 342 (5th Cir. 2005).

## ANALYSIS

**A.  BREACH OF CONTRACT**

Langston's first cause of action is for breach of contract. He claims ANPAC breached the Policy by failing to comply with the specific provisions relating to policy renewal. Section VII. E of the Policy, titled "Policy Renewal," provides, in relevant part, as follows:

> **E. Policy Renewal**
> 1. This policy will expire at 12:01 a.m. on the last day of the policy term.
> 2. We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.
> 3. If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:
>    a. If you or your agent notified us, not later than one year after the date on which the payment of the renewal premium was due, of non-receipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed.
>    b. If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the policy. In that case, the policy will remain an expired policy as of the expiration date shown on the Declarations Page.

Dkt. 16-2 at 21. In short, Langston takes the position that the Policy "provide[s] an insured [the] ability to contact the insure[r] within one year after the premium was

4

due and have the policy renewed." Dkt. 16 at 4. That argument evidences a fundamental misunderstanding of how the "Policy Renewal" section operates. The express language of this provision allows an insured to renew a policy within a year after the date a renewal payment was due under two separate conditions: (1) if the renewal notice was not mailed; or (2) if the renewal notice was mailed, but there was a mistake, such as an incorrect, incomplete, or illegible address, which delayed receipt until after the due date of the premium payment. Neither situation applies here.

The contractual provision at issue does not provide any relief to Langston because the summary judgment evidence establishes beyond peradventure that the Renewal Notice was mailed to Langston at his home at 6 Whittier Drive. Attached to ANPAC's Motion for Summary Judgment is a declaration from J. Scott Lapine, an authorized ANPAC corporate representative, who represents that the Renewal Notice was "placed in the U.S. Mail [to Langston at 6 Whittier Drive] on the date identified in accordance with ANPAC's standard mailing procedures." Dkt. 15-3 at 4. The Lapine declaration further indicates that ANPAC conducted a subsequent investigation, which revealed that the Renewal Notice (as well as the Flood Insurance Expiration Notice) were mailed to Langston at 6 Whittier Drive. No summary judgment evidence refutes the fact that ANPAC placed the Renewal Notice in the hands of the United States Postal Service for delivery. It is undisputed that the Renewal Notice was properly addressed to Whittier at his correct address. No mistake, such as an incorrect, incomplete, or illegible address, occurred here.

Langston contends that he never received the Renewal Notice in the mail. Even if true, this is completely immaterial. Under the unambiguous terms of the Policy, ANPAC was required to mail the Renewal Notice to Langston. ANPAC unquestionably did that, sending the Renewal Notice to 6 Whittier Drive. The Policy does not require that Langston actually receive the Renewal Notice. It is well established that "the provisions of an insurance policy issued pursuant to a federal

5

program must be strictly construed and enforced." *Gowland v. Aetna*, 143 F.3d 951, 954 (5th Cir. 1998).

Because there is no evidence that ANPAC breached the Policy, summary judgment is appropriate on Langston's breach of contract claim.

**B.    DECLARATORY JUDGMENT**

Langston also requests declaratory judgment, although the live pleading does not describe with any particularity what exactly Langston wants the Court to declare. As framed, it appears as if Langston seeks a declaratory judgment to the same effect as his breach of contract action—that is, that ANPAC did not allow Langston to renew his flood insurance as permitted by the Policy. As already discussed in depth, I have determined that ANPAC did not violate the terms of the Policy. Resolving Langston's breach of contract claim necessarily determines the declaratory judgment claim as well. *See Munguia v. Pennymac Loan Servs., LLC*, No. 7:20-cv-00070, 2020 WL 4934593, at *10 (S.D. Tex. Aug. 24, 2020) ("[B]ecause the Court granted summary judgment in favor of Defendant with respect to Plaintiff's breach of contract claim, the Court has effectively resolved the construction and validity of Plaintiff's contracts and determined Plaintiff's legal relations with respect to the instruments."). Accordingly, Langston's declaratory judgment claim fails as a matter of law.

**C.    DTPA**

Last but not least, Langston brings a cause of action under the DTPA. The crux of this claim is that ANPAC represented "selling a product / goods or services with the intent not to sell as advertised." Dkt. 1-2 at 2.

The Fifth Circuit has unmistakably held that state law extra-contractual claims brought in conjunction with a federal NFIP breach of contract claim are preempted by federal law. *See Grissom v. Liberty Mut. Fire Ins. Co.*, 678 F.3d 397, 401 (5th Cir. 2012) ("If the individual is already covered and in the midst of a non-lapsed insurance policy, the interactions between the insurer and insured, including renewals of insurance, are 'claims handling' subject to preemption.");

*Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir. 2005) (affirming dismissal of Texas Insurance Code and DTPA claims because "state law tort claims arising from claims handling by a WYO are preempted by federal law."). Accordingly, Langston's extra-contractual claim for an alleged DTPA violation is preempted by federal law. *See Greenberg v. Wright Nat'l Flood Ins. Co.*, No. 3:15-cv-3871, 2016 WL 5661666, at *3 (N.D. Tex. Sept. 29, 2016) (dismissing DTPA claims asserted in a dispute involving a federal flood insurance policy claim).

## CONCLUSION

For the reasons stated above, ANPAC's Motion for Summary Judgment (Dkt. 15) is **GRANTED**. This case is dismissed. I will issue a final judgment separately.

SIGNED this 28th day of November 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

7